TIMOTHY G. TACKETT,
             Plaintiff,

     vs.

JON LITSCHER, CATHY JESS, PAUL KEMPER,
L. BARTOW, L. ALSUM, E. DAVIDSON,
L. LEBLANC, RANDALL HEPP, J. ALDANA,
M. SCHOMISCH, G. BORNICK, KEVIN KREMBS,
GREG BURMEISTER, GWEN HODGES, KRISTEN
VASQUEZ, CANDICE WHITMAN, LAURA FRAZIER,
MS. LYYSKI, CHARLES LARSON, JULIE
LUDWIG, and SHERRI PULDA,
             Defendants.

**AMENDED**

**CIVIL COMPLAINT**

Case No.: 18-cv-224-jdp

DOC NO
REC'D/FILED
2018 AUG 27  AM 10: 59

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

## COMPLAINT FOR DAMAGES
## AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1. This is a Civil Rights action filed by Timothy Tackett, a Wisconsin State
Prisoner, and seeking Injunctive Relief and Damages under 42 U.S.C. § 1983
alleging delaying/denial of medical care in violation of his Eighth Amendment
to the United States Constitutional Rights to receive medical care, and denial
of equal protection of the laws of the Fourteenth Amendment to the United
States Constitutional Rights to receive similarly situated medical care.

### II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in
that this is a civil action arising under the Constitution of the United
States.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 (a)(3)
in that this action seeks to redress the deprivation, under Color of State
Law, of rights secured by Acts of Congress providing for Equal Rights of
persons within the jurisdiction of the United States.

### III. PARTIES

4. Plaintiff Timothy Tackett at all times relevant to this complaint was
confined by the Wisconsin Department of Corrections (WDOC) - Division of
Adult Institutions (DAI) at Racine Correctional Institution (RCI) and/or
Fox Lake Correctional Institution (FLCI).

5. Defendant Litscher is the Secretary of the Department of Corrections and
is at all times relevant to this complaint employed at WDOC. He is sued in
his Official and Individual Capacities.

6. Defendant Jess is the Assistant Secretary of the Department of Corrections
and is responsible for making decisions on Complaints brought by prisoners

through the grievance process and is at all times relevant to this complaint
employed at WDOC. She is sued in her Official and Individual Capacities.

7. Defendant Kemper is the Warden of RCI and is responsible for reviewing
all administrative appeals. He is at all times relevant to this complaint
employed at RCI. He is sued in his Official and Individual Capacities.

8. Defendant Bartow is the Institution Complaint Examiner and is responsible
for investigating the facts of a complaint throuh the grievance system and
making a recommendation based on those facts to the Reviewing authority of
WDOC.

9. Defendant Alsum is the Reviewing Authority and is responsible for making
a decision based on the facts found during the investigation of a prisoner's
grievance and making a recommendation to the Corrections Complaint Examiner.
She is at all times relevant to this complaint employed at WDOC. She is sued
in her Official and Individual Capacities.

10. Defendant Davidson is the Corrections Complaint Examiner and is respons-
ible for reviewing the record and completing the investigation of the facts
of a complaint, then make an educated recommendation to the Office of the
Secretary of WDOC.

11. Defendant Leblanc is a 3rd shift corrections Captain Supervisor
responsible for 3rd shift operations and is in charge of the safety and
security of all staff and prisoners during his shift. He is at all times
relevant to this suit employed at FLCI. He is sued in his Individual
Capacity.

12. Defendant Hepp is the Warden of FLCI and is responsible for reviewing
all administrative appeals. He is at all times relevant to this complaint
employed at FLCI. He is sued in his Official and Individual Capacities.

13. Defendant Aldana is the Security Director of RCI and is responsible for
the safety and security of all prisoners at RCI. He is also responsible for
the transportation of prisoners to outside medical appointments. He is at
all times relevant to this complaint employed at RCI. He is sued in his
Official an Individual Capacities.

14. Defendant Schomisch is the Security Director of FLCI and is responsible
for the safety and security of all prisoners at FLCI. He is also responsible
for the transportation of prisoners to outside medical appointments. He is
at all times relevant to this complaint employed at FLCI. He is sued in his
Official and Individual Capacities.

15. Defendant Bornick is a Correctional Officer Sergeant supervising 3rd
shift housing unit 3, which Plaintiff lived on during and after both surgeries
and is at all times relevant to this complaint employed at FLCI. He is sued

in his Individual capacity.

16. Defendant Krembs is a Medical Doctor and at all times relevant to this complaint employed at RCI and is responsible for providing medical care to prisoners and specifically ordering a medical appointment outside the prison when a prisoner needs specialized treatment or evaluation. He is sued in his Official and Individual Capacities.

17. Defendant's Burmeister and Hodges are nurses and at all times relevant to this complaint employed at RCI and are responsible for screening prisoner patient's injuries. They are being sued in their Individual Capacities.

18. Defendant Vasquez is the Health Services Manager at RCI and at all times relevant to this complaint employed at RCI and is generally responsible for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized medical treatment, follow up medial care and/or evaluation. She is sued in her Individual Capacity.

19. Defendant Whitman is the Health Services Manager at FLCI and at all times relevant to this complaint employed at FLCI and is generally responsible for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment, follow up medical care and/or evaluation. She is sued in her Individual Capacity.

20. Defendant Frazier is the Assistant Health Services Manager at RCI and at all times relevant to this complaint employed at RCI and is generally responsible for any overflow from the Health Services Manager for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized medical treatment, follow up medical care and/or evaluation. She is sued in her Individual Capacity.

21. Defendant Lyyski is the Property Sergant at FLCI and at all times relevant to this complaint employed at FLCI and is generally responsible for screening all prisoners property upon arrival into the institution and making the decision to allow items to enter the premises or not. She is sued in her Individual Capacity.

22. Defendant Larson is a Medical Doctor and at all times relevant to this complaint employed at FLCI HSU and is responsible for providing medical care to prisoners and specifically ordering a medical appointment outside the prison when a prisoner needs specialized treatment or evaluation and ordering the prescribed medication which the outside specialist ordered the prisoner to take as prescribed. He is sued in his Offcial and Individual Capacities.

23. Defendant Ludwig is the Assistant Health Services Manager at FLCI and at all times relevant to this complaint employed at FLCI and is generally responsible for any overflow from the Health Services Manager for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized medical treatment, follow up medical care and/or evaluation. She is sued in her Individual Capacity.

24. Defendant Pulda is a nurse and at all times relevant to this complaint employed at FLCI and is responsible for screening prisoner patient's injuries. She is being sued in her Individual Capacity.

25. All of the defendant's have acted, and continue to act, under color of state law at all times relevant to this complaint.

### IV. EXHAUSTION OF AVAILABLE REMEDIES

26. Plaintiff exhausted his administrative remedies before filing this complaint.

### V. FACTS

27. Plaintiff worked for RCI in the Maintenance Department for approximately 3 and 1/2 years (2013-2016).

28. Approximately July of 2015, the Plaintiff was working when a printer was dropped on his foot, his job duties as an Inmate Electronic Technician included among other things: printer installation, removal, and trouble shooting of most of the printers located throughout RCI.

29. Plaintiff tried to keep working, because he saw how RCI maintenancewill fire workers if they get hurt.

30. Plaintiff asked the housing unit to send him to HSU after he could no longer stant the pain on 7-13-2015, and asked nurse Lisa for an x-ray, who replied that Defendants Krembs and Vasquez wouldn't approve it.

31. Plaintiff complained again to Nurse Rwas on 7-17-2015 and was only given a cane.

32. Plaintiff continued writing Health Service Requests to HSU complaining of the chronic pain, assuming the HSU manager would address this issue.

33. Plaintiff finally saw Defendant Krembs on 10-30-2015 and ordered an x-ray, 4 months after the injury was sustained.

34. Defendant Krembs ordered Plaintiff to try multiple different medications and ordered a steroid injection into Plaintiff's 3rd toe on 11-19-2015.

35. Plaintiff complained to Nurse Epping how the bottom of Plaintiff's foot feels like he's stepping on a roxk and pain shoots from the bottom of the foot to the top when Plaintiff steps down. Plaintiff was informed that the HSU manager would be notified of Plaintiffs concerns.

36. Plaintiff received a steroid injection at the Bursa of the 3rd toe by Defendant Krembs on 1-21-2016.

37. Plaintiff notified Defendant Krembs with a Health Services Request on 2-7-2016 that the injection made the injury hurt worse.

38. Defendant Krembs increased Plaintiff's priority but failed to immediately send Plaintiff to a specialist.

39. Plaintiff was sent to an outside specialist (Orthopedic Surgeon Dr. Matthew Larson) on 4-7-2016 due to chronic pain and possible diagnosis of neuroma. Dr. Matthew Larson wanted to "try" orthotics to possibly avoid having to do surgery, and made the order for the orthotics the same day.

40. Dr. Matthew Larson showed Plaintiff on the x-ray where the hair line fracture happened and stated that Plaintiff had neuropraxia/neuritis and metatarsalgia.

41. Dr. Matthew Larson also ordered follow up medical care in 3 months to allow time to get the orthotics and evaluate if this would work or the need to schedule a surgery, to end the chronic pain.

42. Defendants Krembs, Vasquez, and Frazier were notified in writing by Dr. Matthew Larson, of the Follow up appointment around 7-7-2016, on 4-7-2016, the same day Plaintiff returned from the off site transport and his diagnosis.

43. Plaintiff did not receive the orthotics for 5 months. They were made and fitted through Physio O & P and specifically for plaintiff's tennis shoes (Plaintiff owned New Balance shoes). Plaintiff was ordered to be wearing these "When he's on his feet".

44. Plaintiff informed Defendants Vasquez and Kemper of the delay of medical treatment and chronic pain on 4-23-2016 according to Dr. Matthew Larson's diagnosis dated 4-7-2016.

45. Plaintiff informed Defendant Frazier of the chronic pain on 5-7-2016.

46. Plaintiff wrote Defendants Vasquez and Kemper on 5-30-2016 about the chronic pain and not receiving responses to the Plaintiffs medical request slips.

47. This "FOLLOW UP" with the orthopedic surgeon, Dr. Matthew Larson, NEVER HAPPENED.

48. Plaintiff pleaded with Defendant Krembs to follow Dr. Matthew Larson's recommendations on 6-17-2016, to eliminate the chronic pain.

49. Defendant's Litscher, Kemper, Krembs, Vasquez, and Frazier failed to act on the ordered follow up medical care.

50. Instead, these defendant's deliberately ignored the specialist's order, even after plaintiff informed them on multiple occasions he was still in constant severe chronic pain.

51. This injured are is now permanently disfigured, scarred and has permanent loss of feeling in 2 toes. Plaintiff will no longer be the same person he was prior tot the injury, in or out of prison, due to the amputation, permanent loss of feeling on left foot/toes, and now permanently prescribed a lifetime of wearing orthotics and constant nerve pain.

52. There is permanent loss of feeling on part of the pad on the bottom of Plaintiff's left foot, and nerve pain on other areas of the same area. Per medical orders, Plaintiff must now wear orthotics when on his feet, giving him a permanent disability.

53. PPlaintiff's left foot has been in pain since the injury happened on the top and bottom of his foot. The severe pain on the top goes from the tip of his toes through his metatorsal bones of the injured foot.

54. The bottom of Plaintiffs foot felt like he was walking on a rock at all times. This made iit very difficult for the plaintiff to enjoy any normal activities. See exhibit "Q" Declaration of Clifford Boland.

55. Defendant's Frazier, Vasquez, and Krembs refused to address Plaintiffs chronic pain until 11-22-2016. Then, instead of returning Plaintiff to Dr. Matthew Larson for the 7-7-2016 follow up appointment, these defendants prescribed a less effective method of Duloxetine and defendant Krembs noted Gabapentine when Duloxetine wouldn't work.

56. On 9-20-2017, 3 and 1/2 months after arriving at FLCI and having to start over complaining to this new Health Services Staff about the injury and follow up medical care, Plaintiff was finally sent to another specialist (Dr. Robert Bertram), Because Dr. Matthew Larson was too far away.

57. This resulted in another delay in the treatment because Dr. Bertram had to make his own medical diagnosis and treatment plan.

58. Dr. Bertram immediately diagnosed Plaintiff with chronic pain and permanent nerve damage.

59. Dr. Bertram ordered an MRI followed by surgery and stated because of the severe chronic pain, he would schedule the surgery to be completed within 4 weeks.

60. Dr. Bertram also diagnosed the same foot and toes with a fungus and prescribed Penlac Topical Solution.

61. This prescription was denied immediately upon returning to FLCI Health Services. Nurse Pulda stated that per policy they will not give it to me because WDOC will not authorize the purchas of it. As of the filing ot this complaint, no treatment has been given.

62. On 9-20-2017 Dr. Bertram scheduled an MRI followed by surgery.

63. Plaintiff complained again 11-2017 due to more delays in medical treatment

64. Plaintiff tried to use the chain of command at RCI by writing multiple times to defendant's Vasquez and Kemper.

65. This resulted in no effect in getting any follow up medical care by RCI, so Plaintiff finally exhausted his administrative remedies through the prisoner grievance procedure available at FLCI to try to solve the deliberate indifference inflicted upon him by both personnel at RCI and FLCI.

66. On 10-23-2017, Plaintiff presented the facts related to specifically an MRI and surgery that never happened and was still waiting in extreme pain, specifically related to portions of this complaint on Inmate Complaint file number FLCI-2017-27258.

67. On 11-20-2017, Plaintiff was sent a response saying that the grievance had been dismissed based on the facts as presented. On 11-21-2017, Plaintiff appealed the dismissal of the grievance to the appropriate authority. He received a decision by C. O'Donnell - Office of the Secretary on 1-23-2018 dismissing the complaint and accepted as the decision of the Secretary. Plaintiff's grievance on this issue is attached as Complaint Exhibits A through C and his appeal of this grievance as Complaint Exhibits D through F.

68. On 11-3-2017, Plaintiff presented the facts relating to specific follow up medical care ordered by Dr. Matthew Larson, who RCI put me under the care of, to be returned to him within 3 months from 4-7-2016 due to the ongoing chronic pain. Also for not receiving proper medical care and surgery for Plaintiff's foot/toe. This was completed on Inmate Complaint file number FLCI-2017-28392.

69. On 11-7-2017, Plaintiff was sent a response saying that the grievance had been rejected because it was previously addressed in complaint FLCI-2017-27258, on 11-21-2017. Although this complaint was for the follow up medical care, not for an MRI or surgery. Plaintiff appealed the rejection of the grievance to the appropriate authority. Plaintiff received a decision by L. Alsum on 12-4-2017 stating it was properly rejected per DOC 310.11(5) and advising plaintiff to submit an HSR if needs follow up, although Plaintff has asked for a follow up on multiple occasions as noted on one such date as shown in Complaint Exhibit "S". Plaintiff's grievance on this issue are attached as Complaint Exhibits "G" through "H" and Plaintiff's request for review of this grievance as Complaint Exhibits "I" through "J".

70. Plaintiff was finally sent to Waupon Memorial Hospital (WMH) to have surgery for neuroma and bursitis directed caused by the impact of the printer on Plaintiff's left foot and the deliberate indifference of Defendants Aldana, Krembs, Burmeister, Hodges, Vasquez, Hepp, Whitman, Frazier, Larson, and

Ludwig towards the Health, Welfare, Safety, follow up medical care, and delay in treatment for approximately 1000 days of past pain.

71. The procedure was done by Dr. Robert Bertram, who ordered acetaminophen-HYDROcodone, orally every 6 hours interval, "as needed for pain". The first night following surgery, Plaintiff was given the medication at "BEDTIME: or 6:50 p.m.

72. Plaintiff awoke at 1:23 a.m. in extreme pain, approximately 6 and 1/2 hours after the last dosage.

73. Plaintiff talked with Defendant Bornick who said he talked with Defendant Leblanc, and acknowledged and empathized with the extreme pain, yet refused to follow Dr. Robert Bertram's orders for the pain management medication, even after being shown the prescription instructions from the hospital. Plaintiff believes they have the authorative positions to administer pain medication in the middle of the night as it has happened to other prisoners in the recent past.

74. This extreme pain returned every night for weeks, putting Plaintiff in an unnecessary amount of pain derived from this deliberate action. See Exhibits "Q" and "R" Declarations of Boland and Knigge.

75. On 11-20-2017, Plaintiff presented the facts relating specifically to not giving Plaintiff Physician ordered pain medication as needed. This was completed on Inmate Complaint file number FLCI-2017-29750.

76. On 12-7-2017, Plaintiff was sent a response saying that the grievance had been AFFIRMED by L. Bartow and Affirmed with Modification by L. Alsum. On 12-21-2017 Plaintiff appealed the decision to theappropriate authority. Plaintiff received a decision by C. Jess - Office of the Secretary 1-15-2018 stating Affirmed with Modification and accepted as the decision of the Secretary. Plaintiff's grievance on this issue are attached as Complaint Exhibit "K" through "M" and his appeal of this grievance as Complaint Exhibit "N" through "P".

77. From 11-7-2017, the day of surgery No. 1, through 5-1-2018, Plaintiff sent multiple requests to HSU, who Plaintiff believes were going to Defendants Whitman and Ludwig, for assistance with the on going pain, no personnel at FLCI has provided any medical attention to this injury.

78. Approximately 5 months after surgery No. 1, Plaintiff is still having severe chronic pain in his foot at least a couple hours a day. There is permanent loss of feeling in 2 toes, top and bottom of the left foot. The last visit with Dr. Robert Bertram was 12-2017 and he ordered a follow up in 3 months, during which time no staff at FLCI checked the progress of the healing.

79. At the follow up at WMH, Dr. Parikh ordered a scheduled surgery for the amputation of one of the toes due to ongoing problems caused by the accident and the lack of treatment in the early stages following the injury.

80. On July 23, 2018, Plaintiff was sent to SSM Health Care Center in Fond du Lac for the "amputation of left 4th digit toe." Dr. Parikh-Bertram ordered Norco 5mg-325mg oral tablet (acetaminephen-HYDROcodone) 1 Tablet(s) Oral every 6 hours interval.

81. Plaintiff arrived back at the institution the same day approximately 10:30 a.m. and immediately delivered to HSU for verbal reading by nurse Kiser, who read and stated the Dr's orders from the Off-Site Services Request and Report including the medicaiton instructions.

82. Plaintiff was called to HSU at 8:00 a.m. on 7-24-2018 and informed Nurse Kiser of the extreme pain during the night, and asked to receive the NORCO that the specialist ordered and said I needed. She said "Dr. Larson ordered not to give it to you at night, between 6:50 p.m. and 6:30 a.m."

83. Plaintiff wrote Defendant Whitman expressing the chronic pain during the nights following surgery No. 2. Defendant Ludwig called Plaintiff to HSU and informed him Defendants Whitman, Larson, and Ludwig are denying the Norco at night.

84. Plaintiff awoke multiple times during the following nights suffering extreme pain with no relief to be expected until the morning due to being deliberately denied Dr. Parikh-Bertram's, Specialist in Podiatry, ordered pain management medication Norco every 6 hours.

85. Dr. Matthew Larson ordered a follow up on 4-7-2016, 2 years after verbally stating "if the orthotics don't work in 3 months we will probable have to go forward with surgery", now plaintiff is having multiple surgeries due to the chronic pain.

86. Plaintiff's personal shoes (New Balance) that were fitted with the orthotics were taken and destroyed by Sargent Lyyski when tranferred to FLCI commenting that the tears in the cloth at the heal might allow inmates to hide contraband.

## VI. STATEMENT OF CLAIMS FOR RELIEF
### A. DEFENDANT JON LITSCHER

87. Defendant Litscher knew on 1-2-2018 Plaintiff did not receive surgeon ordered pain management medication as prescribed following surgery from 11-7-2017 through 11-28-2017, upon receiving Plaintiff's Inmate Complaint.

88. The negligent failure of Defendant Litscher to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-1018 through 7-28-2018 after the amputation

of Plaintiff's toe.

89. It is unknown why Defendant Litscher Deliberately took no action on Plaintiff's serious medical needs.

90. As a direct result of Defendant Litscher's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

### B. DEFENDANT CATHY JESS

91. Defendant Jess knew on 1-2-2018 Plaintiff did not receive surgeon ordered pain management medication as prescribed following surgery from 11-7-2017 through 11-28-2017, upon receiving Plaintiff's Inmate Complaint.

92. The negligent failure of Defendant Jess to Investigate and act on her knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

93. It is unknown why Defendant Jess Deliberately took no action on Plaintiff's serious medical needs.

94. As a direct result of Defendant Jess's negligent failure to provide needed pain management medicatoin, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

### C.   E. DAVIDSON

95. Defendant Davidson knew on 1-2-2018 Plaintiff did not receive surgeon ordered pain management medication as prescribed following surgery from 11-7-2017 through 11-28-2017, upon receiving Plaintiff's Inmate Complaint.

96. The negligent failure of Defendant Davidson to Investigate and act on his/her knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

97. It is unknown why Defendant Davidson Deliberately took no action on Plaintiff's serious medical needs.

98. As a direct result of Defendnat Davidson's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

### D. DEFENDANT L. BARTOW

99. Defendant Bartow knew on 11-22-2017 Plaintiff did not receive surgeon ordered pain management medication as prescribed following surgery from 11-7-2017 through 11-28-2017, through the documents relied upon, "Prescribers Orders", which was prescribed by Robert M. Bertram, DPM. RX: Norco 5mg-325mg oral tablet, 1 tab(s) POq6hr PRN Pain, with a comment dispense as written.

100. The negligent failure of Defendant Bartow to Investigate and act on his/her knowledge of this serious harm to Plaintiff resulted in a repeat

of this negligent action during 7-23-2018 through 7-28-2018 after the
amputation of Plaintiff's toe.

101. Defendant Bartow knew of the delayed follow up medical care with Dr.
Matthew Larson on 11-7-2017, whcih Plaintiff was diagnosed with neuroproxia
of the nerve in the left foot and ordered to be returned for follow up medical
care around 7-7-2016, and rejected the complaint stating the issue was raised
in a prior complaint.

102. The negligent failure of Defendant Barow to properly investigate and
act on the knowledge of this serious harm to Plaintiff, it would have revealed
this issue was not raised anywhere.

103. It is unknown why Defendant Bartow Deliberately took no action on
Plaintiff's serious medical needs.

104. As a direct result of Defendant Bartow's negligent failure to provide
needed medical treatment, Plaintiff suffered further injury and physical
and emotional pain and injury, and chronic pain.

### E. DEFENDANT L. ALSUM

105. Defendant Alsum knew on 12-7-2017 Plaintiff did not receive surgeon
ordered pain management medication as prescribed following surgery from 11-
7-2017 through 11-28-2017, through the documents relied upon. Then stated
follow up care was ongoing. In fact HSU personnel were not providing any
follow up care, including checking for infections.

106. The negligent failure of Defendant Alsum to Investigate and act on
his/her knowledge of this serious harm to Plaintiff resulted in a repeat
of this negeligent action during 7-23-2018 through 7-28-2018 after the
amputation of Plaintiff's toe.

107. Defendant Alsum knew of the delayed follow up medical care with Dr.
Matthew Larson on 11-22-2017, which Plaintiff was diagnosed with neuroproxia
of the nerve in the left foot and ordered to be returned for follow up medical
care around 7-7-2016, and rejected stating previously addressed. In fact,
the follow up medical appointment with Dr. Matthew Larson was NOT previously
addressed.

108. The negligent failure of Defendant Alsum to properly investigate and
act on the knowledge of this serious harm to Plaintiff, it would have revealed
this issued was not raised anywhere and multiple HSR's "were" submitted for
the follow up appointment.

109. It is unknown why Defendant Alsum Deliberately took no action on
Plaintiff's serious medical needs.

110. As a direct result of Defendant Alsum's negligent failure to provide
needed pain management medicaiton and follow up medical appointments,
Plaintiff suffered further injury and physical and emotional pain and injury,

and chronic pain.

## F. DEFENDANT PAUL KEMPER

111. Defendant Kemper knew on 4-23-2016 that Plaintiff was being delayed and/or denied medical treatment of not getting an x-ray following the accident but waiting 3 months later when the fracture was healing then again 6 months later after the fracture healed, but was diagnosed with nerve damage and failed again on 5-30-2016 of a more detailed letter for the MRI which would have shown to surgery was needed.

112. The Negligent failure of Defendant Kemper to Investigate and act on his knowledge of this serious harm to plaintiff resulted in years of chronic pain and the amputation of Plaintiff's toe.

113. It is unknown why Defendant Kemper Deliberately took no action on Plaintiff's serious medical needs.

114. As a result of Defendant Kempers negligence to intervene when he received the first letter copied to him on 4-23-2016 from the Plaintiff, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

## G. DEFENDANT RANDALL HEPP

115. Defendant Hepp knew on 11-7-2017 that Plaintiff never received the Follow u medical care with Dr. Matthew Larson, Orthopedic Surgeon in Racine, up on receiving Plaintiff's Inmate complaint.

116. The negligent failure of Defendant Hepp to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in the amputation of Plaintiff's toe.

117. It is unknown why Defendant Hepp Deliberately took no action on Plaintiff's serious medical needs.

118. As a direct result of Defendant Hepp's negligent failure to order a follow up with Dr. Mattherw Larson of Racine and pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

## H. DEFENDANT J. ALDANA

119. Defendant Aldana knew in July 2015 of the injury to Plaintiff's foot. All work related injuries, according to DOC policy receive an incident report to the Security Director.

120. The negligent failure of Defendant Aldana to Investigate and act on his knowledge of this serious harm to Plaintiff ultimately led to the amputation of Plaintiff's toe.

121. It is unknown why Defendant Aldana Deliberately took no action on Plaintiff's serious medical needs.

122. As a direct result fo Defendant Aldana's negligent failure by not

providing transport, following the injury, to the hospital for x-rays/MRI, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain and amputation of his toe.

## I. DEFENDANT M. SCHOMISCH

123. Defendant Schomisch knew on 6-19-2017 of Plaintiff's major medical needs because of his responsibilities of providing security for transport of inmates to their respective appointments.

124. Defendant Schomisch is responsible for the safety and security of all inmates and security personnel and train his staff to treat inmate in similar situations equally.

125. Defendant Schomisch knew on 11-22-2017 of Plaintiff did not receive surgeon ordered pain management medication as prescribed following surgery from 11-7-2017 through 11-28-2017, upon plaintiff's return from transport.

126. The negligent failure of Defendant Schomisch to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

127. It is unknown why Defendant Schomisch deliberately took no action on Plaintiff's serious medical needs.

128. As a direct result of Defendant Schomisch's negligent failure to provide needed transport and pain medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

## J. DEFENDANT L. LEBLANC

129. Defendant Leblanc knew on 11-7-2017 of Plaintiff's major medical needs, had authority to dispense surgeon ordered pain management medication as prescribed from 11-7-2017 through 11-28-2017, by treating inmates equal in similar situations.

130. The negligent failure of Defendant Leblanc to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent actionduring 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

131. It is unknown why Defendant Leblanc deliberately took no action on Plaintiff's serious medical needs.

132. As a direct result of Defendant Leblanc's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

## K. DEFENDANT G. BORNICK

133. Defendant Bornick knew on 11-7-2017 of Plaintiff's major medical needs, had authority to dispense surgeon ordered pain management medication as

prescribed from 11-7-2017 through 11-28-2017, by treating inmates equal in similar situations.

134. The negligent failure of Defendant Bornick to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

135. It is unknown why Defendant Bornick deliberately took no action on Plaintiff's serious medical needs.

136. As a direct result of Defendant Bornick's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

### L. DEFENDANT KEVIN KREMBS

137. Defendant Krembs knew on 10-30-2015 of the chronic pain from the injury to Plaintiff's foot, acknowledged tenderness on the toe joint. Diagnosed a problem with the bursa of the toe and ordered ortho referral all on 1-21-2016, updated the priority for ortho on 2-23-2016, acknowledged the diagnosis of neuropraxia by Dr. Mattew Larson and bursitis but even after receiving the orthotics, Defendant Krembs tried a less expensive treatment to the follow up with Dr. Matthew Larson.

138. The negligent failure of Defendant Krembs to order the follow up medical with Dr. Matthew Larson and providing less effective treatment to the bursitis he diagnosed and act on his knowledge of this serious harm to Plaintiff resulted in years of chronic pain, past, present, and future suffering and the amputation of Plaintiff's toe.

139. It is unknown why Defendant Krembs deliberately took no action on Plaintiff's serious medical needs.

140. As a direct result of Defendant Krembs's negligent failure to order a follow up with Dr. Mattew Larson of Racine, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain and amputation of his toe.

### M. DEFENDANT GREG BURMEISTER

141. Defendant Burmeister knew on 2-9-2017 that Plaintiff never received the follow up medcial care with Dr. Matthew Larson in Racine and the chronic pain Plaintiff was in during an appointment which Plaintiff specifically asked to be seen by defendant Krembs, no nurse.

142. The negligent failure of Defendant Burmeister to Investigate and act on his knowledge ot this serious harm to Plaintiff resulted i years of chronic pain and the amputation of Plaintiff's toe.

143. It is unknown why Defendant Burmeister deliberately took no action on

Plaintiff's serious medical needs.

144. As a direct result of Defendant Burmeister's negligent failure to order a foolow up with Dr. Matthew Larson of Racine, Plaintiff resulted in years of chronic pain and the amputation of Plaitiff's toe.

## N. DEFENDANT GWEN HODGES

145. Defendant Hodges knew on 3-28-2017 that Plaintiff never received the follow up medical care with Dr. Matthew Larson in Racine and the chronic pain Plaintiff was in during an appointment which Plaintiff specifically asked to be seen by defendant Krembs, no nurse.

146. The negligent failure of Defendant Hodges to Investigate and act on her knowledge to this serious harm to Plaintiff resulted in years of chronic pain and the amputation of Plaintiff's toe.

147. It is unknown why Defendant Hodges deliberately took no action on Plaintiff's serius medical needs.

148. As a direct result of Defendant Hodges negligent failure to order a follow up with Dr. Matthew Larson of Racine, Plaintiff resulted in years of chronic pain and the amputation of Plaintiff's toe.

## O. DEFENDANT KRISTEN VASQUEZ

149. Defendant Vasquez was notified on 4-7-2016 by Dr. Matthew Larson for a Follow up appointment by 7-7-2016. Defendant Vasquez was notified on 7-29-2016 by Dr. Krembs of the follow up appointment with Dr. Matthew Larson that didn't happen. Defendant Vasques was notified on 10-26-2016 by nurse roenbaum of the follow up appointment with Dr. Matthew Larson. Defendant Vasquez was notified, believed to be true by Plaintiff, on 3-28-2017 by Gwen Hodges.

150. The continued negligent failure of Defendnat Vasquez to investigate and act on her knowledge of this serious harm to Plaintiff resulted in years of chronic pain, past, present, and future suffering and the amputation of Plaintiff's toe.

151. It is unknown why Defendant Vasquez deliberately took no action on Plaintiff's serious medical needs.

152. As a direct result of Defendant Vasquez's negligent failure to order a follow up with Dr. Matthew Larson of Racine, Plaintiff suffered years of chronic pain, past, present, and future suffering and the amputation of Plaintiff's toe.

## P. DEFENDANT CANDICE WHITMAN

153. Defendant Whitman knew on 6-6-2017 that Plaintiff had chronic pain in his foot and the follow up appointment with Dr. Matthew Larson on 7-7-2016 never happened.

154. Defendant Whitman knew Plaintiff was not receiving the prescribed Penlac and pain management medication as directed by Dr. Robert Bertram on 8-30-2017, 11-7-2017 through 11-29-2017, and 7-23-2018 through 7-29-2018.
155. Defendant Whitman's negligent failure to provide pain management medication prescribed by the surgeon "as prescribed", even reading the prescription on the above dates, and act on her knowledge of this serious harm to Plaintiff resulted in years of chronic pain and unnecessary suffering.
156. It is unknown why Defendant Whitman deliberately took no action on Plaintiff's serious medical needs.
157. As a direct result of Defendant Whitman's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

## Q. DEFENDANT LAURA FRAZIER

158. Defendant Frazier was notified on 4-7-2016 by Dr. Matthew Larson for a follow up appointment by 7-7-2016. Defendant Frazier was notified on 7-29-2016 by Dr. Krembs of the follow up appointment with Dr. Matthew Larson that didn't happen. Defendant Frazier was notified on 10-26-2016 by nurse Rosenbaum of the follow up appointment with Dr. Matthew Larson. Defendant Frazier was notified, believed to be true by Plaintiff, on 3-28-2017 by Gwen Hodges.
159. The continued negligent fairlure of Defendant Frazier to investigate and act on her knowledge of this serious harm to Plaintiff resulted in years of chronic pain, past, present, and future suffering and the amputation of Plaintiff's toe.
160. It is unknown why Defendant Frazier deliberately took no action on Plaintiff's serious medical needs.
161. As a direct result of Defendant Frazier's negligent failure to order a follow up with Dr. Matthew Larson of Racine, Plaintiff suffered years of chronic pain, past, present, and future suffering and the amputation of Plaintiff's toe.

## R. DEFENDANT MS. LYYSKI

Defendant Lyyski knew on 6-6-2017 that Plaintiff had chronic pain in his foot and wore orthotics shaped to fit his personally owned New Balance Shoes.
163. Defendant Lyyski denied replacing the confiscated New Balance Shoes after Plaintiff asked her to provide another pair from the release clothing shelf behind the desk.
164. The negligent failure of Defendant Lyyski to Investigate and act on her knowlege of this serious harm to Plaintiff resulted in years of chronic pain.
165. It is unknown why Defendant Lyyski deliberately took no action on

Plaintiff's serious medical needs.

166. As a direct result of Defendant Lyyski's negligent failure to provide needed specialist fitted shoes, Plaintiff suffered further injury and physical and emotional pain and injury , and chronic pain.

### S. DEFENDANT CHARLES LARSON

167. Defendant Larson knew on 11-7-2017 of the prescription order for Norco Pain management medication by Dr. Robert bertram after surgery and changed the order. As of the date of this complaint defendant Larson has not even examined Plaintiff.

168. The negligent failure of Defendant Larson to Investigate and act on his knowledge of this serious harm to Plaintiff resulted in a repeat of this negligent action during 7-23-2018 through 7-28-2018 after the amputation of Plaintiff's toe.

169. It is unknown why Defendant Larson Deliberately took no action on Plaintiff's serious medical needs.

170. As a direct result of Defendant Larson's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

### T. DEFENDANT JULIE LUDWIG

171. Defendant Ludwig knew on 11-7-2017 that Dr. Robert Bertram's prescription order following surgery No. 1, for pain management medication Norco was 1 tab(s) PO q6hr PRN Pain and changed to 4 times a day only during HSU medication times 6:30 am, 10:30 am, 2:50 pm, and "BEDTIME" 6:50 pm.

172. Defendnat Ludwig knew on 7-23-2018 that Dr. Sanka Parikh's prescription order following surgery No. 2 for pain management medication Norco was 1 Tablet(s) oral every 6 hour interval and informed Plaintiff, Defendant Larson, Defendant Witman, and Defendant Ludwig changed it to follow medication times listed above in paragraph 172 because there is "no nurse at the institution at night."

173. The negligent failure to follow surgeon ordered pain management medication recommendations and ignoring her knowledge of the serious harm to Plaintiff resulted in Major chronic pain.

174. It is unknown why Defendant Ludwig deliberately took no action on Plaintiff's serious medical needs.

175. As a direct result of Defendnat Ludwig's negligent failure to provide needed pain management medication, Plaintiff suffered further injury and physical and emotional pain and injury, and chronic pain.

-CIVIL COMPLAINT - 17

176. Defendant Pulda knew on 8-30-2017 that Dr. Robert Bertram's prescribed Penlac Topical Solution and informed Plaintiff she would not allow Plaintiff to receive it and even though it is for a fungus, Inmates must live with it.

177. The negligent failure to follow a specialist's recommendation and act morally has resulted in Plaintiff still living with a fungus growing on him.

178. It is unknown why Defendant Pulda deliberately took no action on Plaintiff's serious medical needs.

179. As a direct result of Defendant Pulda's negligent failure to provide prescribed medication, Plaintiff suffered emotional injury.

## VII. LEGAL CLAIMS

180. Plaintiff realleges and incorporates by reference 1-179 and Exhibits "A" through "S".

### A. Failure to Protect

181. The failure of Defendant(s) Bornick, Burmeister, Hodges, Vasquez, Krembs, Frazier, Leblanc, Kemper, and Hepp to act on their knowledge of serious harm to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safety.

182. The failure of Defendants Leblac, Hepp, Schomish, Bornick, Whiman, and Larson to provide equal protection of similarly situated medical care among Prisoners incarcerated at FLCI to the Plaintiff violated his Fourteenth Amendment Right of Equal Protection of the Laws of the United States Constitution.

183. As a Direct result of Defendants Litscher, Jess, Kemper, Bartow, Alsum, Davidson, Leblanc, Hepp, Aldana, Schomisch, Bornick, Krembs, Burmeister, Hodges, Vasquez, Whitman, Frazier, Lyyski, Larson, Ludwig and Pulda's actions by vilating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution, and caused plaintiff past pain, suffering, physical injury, including future pain, multiple surgeries, future medical costs manifested by the defendants response or lack of response to the Plaintiff's needs by intentionally denying and delaying access to "Follow up medical care" and not making available a specialist's prescribed "pain management medication as prescribed by the surgeon". each Defendant was deliberately indifferent to Plaintiff's Health and safety.

184. Plaintiff did have a serious medical need that was determined by Dr. Krembs in 2015, Dr. Matthew Larson in April 2016, Dr. Robert Bertram in

September 2017, and again in April 2018. This serious medical need is proven
by the first surgery and in the second surgery for the same wound and the
removal of a piece of the Plaintiff's anatomy. This deliberate indifferance
caused the Plaintiff years of chronic pain by the Defendant's listed in
paragraph 183 of this complaint, intentionally not protecting the Plaintiff
from unnecessary wanton and infliction of pain which violated the Plaintiff's
rights under the Eighth Amendment to the United States Constitution.

185. As a result of the Defendants listed in paragraphs 181 through 183 of
this complaint's failure, Plaintiff received serious physical and emotional
injuries and loss of a body part.  *B. Deliberate Indifference to medical Needs*

186. The refusal or outright denying to follow Dr. Matthew Larson's follow
up medical care ordered, by Defendant's Kemper, Hepp, Burmeister, Hodges,
Krembs, Vasquez, Frazier and Alsana, constituted deliberate indifference
to Plaintiff's serious medical needs which violated the Plaintiff's rights
under the Eighth Amendment to the United States Constitution.

187. The refusal or outright denial to give Surgeon and Doctor ordered pain
medication as prescribed by Defendant(s) Bornick, Leblanc, Bassuener, Whitman,
and Larson constituted deliberate indifference to Plaintiff's serious medical
needs which violated the Plaintiff's rights under the Eighth Amendment to
the United States Constitution.

188. As a result of Defendants Whitman, Ludwig, Bornick, Leblanc and Pulda's
failure to provide needed pain medication as ordered by the physicians for
pain, Plaintiff suffered further injury and physical and emotional pain and
injury.

189. The refusal by Defendant(s) Bornick, Litscher, Jess, Kemper, Krembs,
Hepp, Vasquez, Whitman, Frazier, Leblanc, Alsum, Bartow, and Davidson, to
provide protection from cruel and unusual punishment to Plaintiff as a result
of Plaintiff's denied request of plea for help through request slips, written
letters and complaints, Plaintiff received serious physical and emotional
injuries which violated the Plaintiff's rights under the Eighth Amendment
to the United States Constitution.

190. This deliberate indifference caused the Plaintiff years of unnecessary
pain and suffering which resulted in surgery now "twice", ultimately deforming
Plaintiff for life by the loss of an extremity, and according to Dr. Robert
Bertram more chronic pain and surgeries later in life, causing unnecessary
pain and suffering, along with emotional harm from the loss endured by not
being a complete human which violated the Plaintiff's rights under the Eighth
Amendment to the United States Constitution.

## C. Negligent Failure to Protect

191. Defendant(s) Bornick, Kemper, Hepp, Krembs, Vasquez, Frazier, Leblanc, Aldana and Schomish owed Plaintiff a duty of reasonable care to protect him against harm of denying him equal protection of the laws against deliberate indifference to serious medical needs which violated the Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

192. These Defendants listed in paragraph 191 of this complaint, breached that duty by failing to provide protection when Plaintiff informed them, on numerous occasions, that he was in extreme pain and was suppose to have follow up medical care with Dr. Matthew Larson, and produced the same document that are in the institution's medical record for Plaintiff, supporting this from Wheaton Francis Hospital.

193. The Breach of duty in paragraphs 191 and 192 along with the defendants listed in the same, resulted in serious physical and emotional injury and damages which violate the Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

194. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be errepairabley injured by the conduct of the Defendants unless this court grants Declatory and Injunctive relief which the Plaintiff seeks.

### VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the court grant the following relief:

Issue a declatory judgment stating that:

195. Defendant(s) Kemper, Aldana, Hepp, Schomisch, Vasquez and Frazier's failure to take action of the ordered follow up medical care by the specialized medical professional, Dr. Matthew Larson, and ignoring that order for 17 months of a condition that is deemed to be serious, resulting in 2 surgeries, because the failure to treat Plaintiff's condition resulted in further significant injury and unnecessary and wanton infliction of pain resulting in surgery. Also, resulting in prolonged and unnecessary pain by delaying treatment violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

196. Defendant(s) Bornick, Hepp, Leclanc, Whitman, Schomish, Ludwig, and Pulda's failure to issue pain management medication to Plaintiff as was ordered by the specialized medical professional, who Plaintiff was under the care of, for a serious medical condition, violated the Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

197. Defendant(s) Litscher, Kemper, Vasquez, Whitman, Frazier, Jess, Alsum, Bartow, Davidson, Aldana, and Schomisch for deliberately ignoring requests

Case 2:19-cv-00258-JPS   Filed 08/31/18   Page 20 of 22   Document 23

for medical assistance which is sufficiently serious and painful and made this refusal of assistance an uncivilized form of cruel and unusual punishment violated the Plaintiffs rights under the Eighth Amendment of the United States Constitution.

Issue an Injunction ordering Defendant(s)<br>Litscher, Hepp, Whitman or their agents to:

198. Immediately arrange for the Plaintiff's need for other follow up medical treatment/evaluation by a medical practitioner with expertise in the treatment and restoration and function of the nerve damage/bursitis and loss of toe.

199. Carry out without delay the treatment directed by such medical practioner

200. Immediately return the New Balance Tennis Shoes Plaintiff had, or replace with a new pair of the same brand.

Award Compensatory Damages in the following Amounts:

201. $250.000.00 Jointly and Severally against Defendants Kemper, Hepp, Burmeister, Hodges, Krembs, Vasquez, Frazier, Aldana, Schomish and Whitman for the past physical and emotional infuries sustained as a result of the Defendants failure to provide follow up care for prolonged and unnecessary pain resulting in 2 surgeries of approximately 750 days.

202. $450,000.00 Jointly and Severally against defendant's Kemper, Hepp, Burmeister, Hodges, Krembs, Vasquez, Frazier, Aldana, Schomisch, and Whitman for the future physical and emotional injuries Plaintiff will sustain as a result of the Defendants deliberately prolonging treatment.

203. $250,000.00 Jointly and Severally against Defendant(s) Vasquez, Krembs Whitman, Leblanc, Bornick, Larson, Ludwig, and Pulda for failure to administer pain management medication as prescribed by the Specialists, Dr. Robert Bertram and Dr. Parikh-Bertram, whose care Plaintiff was under, depriving Plaintiff of his Constitutional Right to be free of cruel and unusual punishment including extreme physical and emotional injury, violating Plaintiff's Eighth Amendment of the United States Constitution.

204. $250,000.00 Jointly and Severally against Defendant(s) Litscher, Jess, Alsum, Bartow, Davidson, Kemper, Hepp, Frazier, Aldana, Schomisch, for the pain and emotional injury resulting from their denial of due process in connection with the letters, requests and complaints Plaintiff made for medical care protected under the Fourteenth Amendment of the United States Constitution.

205. $250,000.00 Jointly and Severally against Defendant(s) Vasquez, Frazier, Krembs, Whitman, Ludwig, and Pulda for the physical and emotional injury resulting from their failure to provide adequate medical care to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

Award Punitive Damages in the following amounts:

206. $50,000.00 each against Defendant(s) Litscher, Kemper, Hepp, Jess, Aldana and Schomisch.

207. $30,000.00 each against Defendant(s) Bornick, Burmeister, Hodges, Lyyski, Bartow, Alsum, Davidson, Ludwig and Pulda.

208. $50,000.00 each against Defendant(s) Krembs, Vasquez, Frazier, Whitman, Leblanc and Larson.

209. Plaintiff seeks recovery of all costs associated with this suit.

210. Grant any such other relief as it may appear that Plaintiff is entitled.

Dated this 20th day of ___August___, 2018.

Respectfully Submitted,

_Timothy G. Tackett_
Timothy G. Tackett #289514
Fox Lake Correctional Institution
P.O. Box 200
Fox Lake, WI 53933-0200

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed and placed in the United States Postal Box at Fox Lake Correctional Institution at Fox Lake, Wisconsin dated this 20th day of August, 2018.

_Timothy G. Tackett_
Timothy G. Tackett

– CIVIL COMPLAINT – 22