# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TIMOTHY GREG TACKETT,

                    Plaintiff,

v.

CATHY JESS, PAUL KEMPER,
LAURA BARTOW, LORI ALSUM,
EMILY DAVIDSON, LONEL
LEBLANC, GLENN BORNICK,
KEVIN KREMBS, KRISTEN
VASQUEZ, CANDICE WHITMAN,
LAURA FRAZIER, ROXANNE
LYYSKI, JULIE LUDWIG, and
CHARLES LARSON,

                    Defendants.

Case No. 19-CV-258-JPS

**ORDER**

This case comes before the Court on Plaintiff's allegations that his constitutional rights were violated when he was denied medical care at Racine Correctional Institution ("RCI") and Fox Lake Correctional Institution ("FLCI"). (Docket #23). On June 13, 2019, the Court denied Plaintiff's motion to appoint counsel as premature, explaining that it would not entertain such motions until the close of discovery. (Docket #71). Discovery closed on July 25, 2019, and Defendants recently filed a motion for summary judgment. *See* (Docket #83). Plaintiff has filed two more motions to appoint counsel. (Docket #72 and #77). They are substantially similar, although the second motion contains more detail as to Plaintiff's efforts to secure counsel and his concerns about proceeding in the litigation *pro se*. Therefore, the Court will deny the earlier motion as moot, and consider the motion that was filed later in time. Ultimately, it, too, will be

denied. Finally, Plaintiff filed a motion to compel. (Docket #74). For the reasons explained below, that will be denied as well.

1.    **MOTION TO APPOINT COUNSEL**

    1.1    **Background**

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The Court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of the plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When the Court recruits a lawyer to represent a *pro se* party, the lawyer takes the case *pro bono*. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case *pro bono* has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L. R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice here. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once

there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-fund.

The District is eternally grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Though the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful Section 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for *pro bono* appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent *pro se* plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the *pro se* appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of *pro se* prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were Section 1983

---

[1]Although non-prisoner *pro se* litigants may also be considered for the appointment of counsel under Section 1915, the Court does not address that set of *pro se* litigants here for a few reasons. First, the volume of non-prisoner *pro se* litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of *pro bono* counsel, which they do with regularity.

actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of Section 1983 lawsuits has skyrocketed. About 300 Section 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, Section 1983 actions numbered 385, in 2017 it ballooned to 498, and in 2018 it grew to 549. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that when the Court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress' instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are the Court's ever-more-limited time and resources.

## 1.2    Analysis

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating

that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g., Kyle v. Feather*, No. 09–cv–90–bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

Plaintiff states that he has contacted six attorneys to represent him in this case. (Docket #77 at 1). He has not provided their full names, nor has he attached proof of mailing, nor has he indicated which practice areas these attorneys specialize in. In short, Plaintiff has not provided the Court with sufficient information to infer that he has made reasonable efforts to secure counsel.

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a Section 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be tolerated. The purpose of the reasonable-efforts requirement is to ensure that if the Court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself.

To fulfill this duty, a *pro se* prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him. For these reasons, the Court finds that Plaintiff has not yet undertaken reasonable efforts to secure his own counsel without Court intervention. If he files a renewed request for appointment of counsel in the future, he should submit evidence of his continued efforts in this regard, consistent with the Court's guidance.

Notwithstanding his failure to exercise reasonable diligence in obtaining his own lawyer, Plaintiff's request also falters on the second *Pruitt* step: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each *pro se* litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While courts need not address every concern raised in a motion for appointment of counsel, they must address "those that bear directly" on the individual's litigation capacity. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must also incorporate the reality that district courts cannot be expected to secure counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647,

656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of Section 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence or argument showing that he cannot litigate this matter competently on his own. He argues that he is not as qualified as professional counsel would be, and that he expects "strong opposition of the factual evidence implicating the need for cross-examination skills to deal with conflicting testimony." (Docket #77 at 1). He also explains that he will need help navigating the discovery process, tracking down witnesses and evidence, and taking depositions. *Id.* at 2; (Docket #78 at 1).

While Plaintiff may believe that a lawyer would do a better job than he, the Seventh Circuit has rejected this as a reason for appointment of counsel. *Pruitt*, 503 F.3d at 655. Plaintiff's lack of legal training, while unfortunate, brings him in line with practically every other prisoner litigating in this Court. Moreover, it is worth pointing out that unlike a non-prisoner *pro se* litigant, who is generally a member of society with common demands upon his time like work and family obligations, prisoners like Plaintiff have more than sufficient discretionary time to attend to their litigation tasks and develop their cases. Perhaps prison conditions are not ideal for that work, but the time Plaintiff has available to do the work should ease some of his burden.

Furthermore, as a litigant in this Court, Plaintiff is under an obligation to familiarize himself with the relevant legal standards and

procedural rules. The Court assisted Plaintiff in this regard, as it does with all prisoner litigants, by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. (Docket #44). Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Moreover, Plaintiff has submitted no evidence that he suffers from cognitive, behavioral, or other limitations affecting his ability to present his arguments in a cogent fashion. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014); *Walker v. Price*, 900 F.3d 933, 940 (7th Cir. 2018) (noting that courts should consider "any available evidence" of the prisoner's literacy, communication skills, education level, litigation experience, intellectual capacity, or psychological history). His filings to date suggest that he has no such limitation. Thus, although discovery and summary judgment might be part of the "advanced phases" of a case, here there is no reason to think Plaintiff is out of his depth. *James*, 889 F.3d at 327. Therefore, for the reasons explained above, the Court is constrained to deny Plaintiff's motion to appoint counsel.

2.      **MOTION TO COMPEL**

Plaintiff seeks the following documents: x-rays taken in November 2015 at Racine Correctional Institution by Mobilex, USA ("Mobilex"); the Wisconsin Department of Corrections' ("DOC") Division of Adult Institutions healthcare policies; and a transcript of his deposition, which was taken on July 15, 2019. To these ends, he sent subpoenas seeking the x-rays to Mobilex, which signed for them on April 11, 2019, but never responded. (Docket #75 at 1). Plaintiff sent another set of subpoenas regarding the DOC policy to Makda Fessahaye ("Fessahaye"), a DOC administrator, who signed for the subpoenas on May 24, 2019, but also failed to respond. On June 22 and July 15, 2019, Plaintiff sought help with

the subpoenas from Defendants' attorney, Ms. Laure Rakvic-Farr. On July 15, during his deposition, Plaintiff also requested a copy of the transcripts of his deposition so that he could review them for accuracy, pursuant to Federal Rule of Civil Procedure 30(e).

Federal Rules of Civil Procedure 26, 33 and 34 set forth the procedures for serving discovery requests on opposing parties. Civil Local Rule 37 requires the party moving to compel discovery to personally consult with the opposing party in order to resolve differences, and submit a written certification that the parties have attempted, in good faith, to confer. Civ. L.R. 37.

Plaintiff's subpoenas to Mobilex and Fessahaye were not discovery requests directed at Defendants; therefore, a motion to compel as to Defendants is inappropriate. Moreover, Plaintiff has failed to comply with the Court's meet and confer certification requirement. Even if the Court were to generously construe Plaintiff's attempts to seek help from Ms. Rakvic-Farr as attempts to meet and confer, the fact remains that these discovery requests were not actually made to the Defendants.

As stated above, *pro se* litigants are required to familiarize themselves with the procedural rules of this Court. Indeed, Plaintiff is no stranger to federal civil litigation: he previously filed a Section 1983 case in the Eastern District of Wisconsin, (2:17-CV-202), and, as of this order, also has a civil case pending before the Western District of Wisconsin, (3:18-CV-224). It is incumbent on Plaintiff, as a litigator before the federal courts, to not only familiarize himself with the rules, but to conduct discovery accordingly.

Finally, regarding Plaintiff's request to review his deposition transcript, the Court notes that the request is moot. Federal Rule of Civil

Procedure 30(e)(1) permits deponents to review and make changes to their deposition transcript within thirty days of it becoming available, provided they made the request to review the transcript during the deposition. To the extent that Plaintiff complied with Federal Rule of Civil Procedure 30(e)(1), he would be allowed to review the transcript and make changes within thirty days of it becoming available. (Docket #75 at 2). Nevertheless, based on Defendants' summary judgment filings, it does not appear that they intend to use any part of Plaintiff's deposition in support of their motion. There is, therefore, no practical need for Plaintiff to review the deposition for accuracy. Thus, for the reasons stated above, Plaintiff's motion to compel against Defendants is not proper, and must be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to appoint counsel (Docket #72) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Docket #74) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Docket #77) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge